UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 4:21-CR-301

NADIR ABDEL TORRES

## PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas, and Justin R. Martin, Assistant United States Attorney, and the defendant, Nadir Abdel Torres ("Defendant"), and Defendant's counsel, pursuant to Rule **11(c)(1)(A) & (B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Indictment. Count One charges Defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of 18 U.S.C. § 371, is a term of imprisonment of not more than 5 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than 3 years. 18 U.S.C. §§ 3559(a)(4) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of

his sentence, then Defendant may be imprisoned for not more than 2 years, without credit for time already served on the term of supervised release prior to such violation. 18 U.S.C. § 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to 18 U.S.C. § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Cooperation

4. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraphs 36-39 of this agreement.

5. Defendant understands and agrees that the United States will request that his sentencing be deferred until his cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to fraud. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

**Waiver of Appeal and Collateral Review**

7. Defendant is aware that 28 U.S.C. § 1291, and 18 U.S.C. § 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment

3

of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under 28 U.S.C. § 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

10. The United States agrees to each of the following:

   (a) If Defendant pleads guilty to Count One of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

   (b) At the time of sentencing, the United States agrees that it will argue for a loss attributable to the Defendant of $1.4 million or less.

   (c) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant continue to accept responsibility as contemplated by the Sentencing Guidelines through sentencing;

   (d) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

   (e) Because Defendant's guilty plea and acceptance of responsibility under this agreement reduces the risk of flight from prosecution, and in recognition of the fact that the Defendant has agreed in paragraph 5 that his sentencing hearing be deferred until his cooperation is complete, which is an indeterminate amount of time, the United States will recommend—after

the Defendant's guilty plea under this agreement is entered and accepted by the Court—that the Defendant be released on bond with the conditions recommended by the U.S. Probation Office in the Defendant's pretrial report. However, if the Defendant violates any condition of release set by the Court, then the United States is no longer bound by this condition, and it may move for or recommend revocation of the Defendant's bond.

## Agreement Binding - Southern District of Texas Only

11. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of 18 U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

**Rights at Trial**

14. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

15. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

A. *The fraud against American Housing Capital*

16. Christopher Knight Lopez and Jayson Lopez informed Nadir Torres about a potential deal where they would provide American Housing Capital with proof of a large sum of money deposited at a bank, and in exchange, American Housing Capital would pay them for the right to use that money as collateral for an increase in American Housing Capital's line of credit.

8

17. In furtherance of the potential deal with American Housing Capital, on or about April 14, 2016, Nadir Torres opened two accounts at UBS Financial Services Inc. ("UBS") with account numbers xxxx137 and xxxx138. UBS account no. xxxx138 was the account that would purportedly hold the money for American Capital Housing's benefit. However, no money was ever deposited into either of these UBS accounts.

18. On or about April 18, 2016, Nadir Torres told UBS financial advisor Ben Christensen that Torres wanted to wire between $500 million and $1 billion into his UBS account. Nadir Torres falsely told Christensen that Torres' father was rich and would be the source of this money. Nadir Torres requested a letter from UBS stating that they can accept a bank guarantee wire within that range.

19. On or about April 19, 2016, in response to Nadir Torres' request, UBS sent him a letter signed by UBS Director LaGina Nicholas. The letter stated that UBS could accept a wire transfer of funds between $500 million and $1 billion. The letter included wiring instructions for completing the wire transfer.

20. On or about August 15, 2016, Christopher Lopez sent an email to American Housing Capital. Christopher Lopez attached to the email a purported screenshot of an online banking account summary for UBS accounts xxxx137 and xxxx138. The screenshot was forged to falsely claim that account xxxx137 contained $17.5 million, and that account xxxx138 contained $2.5 million. In truth and fact, as Nadir Torres well knew, neither account had any money in them. Christopher Lopez also attached to the email a forged letter purportedly from UBS. According to the fraudulent letter, UBS confirmed the balance of $2.5 million in account xxxx138. The letter

was purportedly signed by LaGina Nicholas, but the signature was forged and appears to have been digitally copied from the letter UBS sent to Nadir Torres on April 19, 2016.

21. On or about August 18, 2016, American Housing Capital entered into an agreement with Jayson Lopez, brokered by Christopher Lopez. Under the terms of the agreement, Jayson Lopez and Aevum Holdings would provide "investment reserve capital" of $2.5 million to American Housing Capital. The agreement also obligated Christopher Lopez, through his company Knight Nguyen Investments, to provide American Housing Capital with a "bona fide account statement" showing liquid cash holdings in the amount of $2.5 million for the benefit of American Housing Capital. In return, American Housing Capital agreed to pay $16,666.67 per month to Christopher Lopez through his company, Knight Nguyen Investments.

22. On September 29, 2016, Christopher Lopez sent an email to American Housing Capital with an attachment containing a forged letter purportedly from UBS. According to the fraudulent letter, UBS confirms the balance of $2.5 million in account xxxx138 for the benefit of American Housing Capital. The letter was purportedly signed by LaGina Nicholas, but the signature was forged and appears to have been digitally copied from the letter UBS sent to Nadir Torres on April 19, 2016.

23. From on or about August 17, 2016 through June 16, 2017, American Housing Capital paid Christopher Lopez via Knight Nguyen Investments a total of $173,656.93, which represented the interest payment they were required to make under the agreement with Christopher and Jayson Lopez. Nadir Torres knew the $2.5 million did not exist and that the documents that were provided to American Housing Capital to induce it to enter into the agreement were fake.

### B. *The fraud against Nexion Biosciences*

24. Nexion Biosciences Inc. ("Nexion") was a company that by 2016 had received a patent on an anti-cancer drug that also had other potential uses. In or about late 2016, Christopher Lopez and Jayson Lopez informed Nexion about a company called Orchid Europe Ltd. that they claimed was willing to invest $50 million into Nexion. Christopher and Jayson Lopez claimed that Nadir Torres was the purported Chief Financial Officer of Orchid Europe. Christopher and Jayson Lopez offered Nexion a purported agreement wherein Orchid Europe would place approximately $50 million into a foreign bank account that Nexion would have access to after it reached clinical trials in its anti-cancer drug. In exchange, Nexion would issue shares of stock to Orchid Europe.

25. On or about November 2, 2016, Christopher Lopez sent an email to Nexion with the proposed agreement with Orchid Europe attached. The agreement contained a forged screen shot purporting to be a statement from the Royal Bank of Scotland ("RBS") for account number xxxx937 in the name of "Orchid Europe Ltd." The statement purports to show a balance of 50 million Euros in the account as of October 15, 2016, which would have equaled approximately $53 million. Nadir Torres knew this account statement was fake and that Orchid Europe did not have an account at RBS, and that Orchid Europe did not have 50 million Euros.

26. On or about November 4, 2016, Nadir Torres and Christopher Lopez executed the above-described agreement between Orchid Europe and Knight Nguyen Investments. However, Nadir Torres knew the agreement was a sham and the 50 million Euros did not exist.

27. On or about March 28, 2017, Christopher Lopez sent an email to Nexion and Jayson Lopez that said "50mm deposited" with an attachment that was a forged bank account statement purportedly issued by RBS for account xxxxx937—this time in the name of Nexion. The statement

11

showed a balance in the account of 50 million Euros, which would have equaled approximately $53 million. However, the bank statement was forged and neither the RBS account nor the 50 million Euros actually existed.

28. From in or about January 2017 through December 2018, Christopher Lopez and his associates raised over $1.1 million from investors in Nexion by providing false and misleading information to actual and potential investors in furtherance of the scheme, including false and fraudulent documents that inflated Nexion's assets by including the non-existent 50 million Euro RBS account.

29. Christopher Knight Lopez, Jayson Lopez, and Nadir Abdel Torres used emails, bank wire transfers, and other communications in interstate or foreign commerce in furtherance of the fraud.

## Breach of Plea Agreement

30. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

31. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

32. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

33. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

34. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

35.     Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

36.     Defendant stipulates and agrees that Defendant obtained at least $26,810 from the criminal offenses and that the factual basis for his guilty plea supports the forfeiture of $26,810. Defendant stipulates and admits that one or more of the conditions set forth in 21 U.S.C. § 853(p), exists. Defendant agrees to forfeit any of Defendant's property in substitution, up to a total forfeiture of $26,810. Defendant agrees to the imposition of a personal money judgment in that amount.

37.     Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

38.     Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

39. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

**Fines**

40. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

41. This written plea agreement constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

42. Any modification of this plea agreement must be in writing and signed by all parties.

Filed in Houston, Texas, on ____June 15_____, 2023.

_____   6/15/2023
Nadir Abdel Torres
Defendant

Subscribed and sworn to before me on ____June 15_____, 2023.

Nathan Ochsner
United States District Clerk

Deputy United States District Clerk

APPROVED:

Alamdar S. Hamdani
United States Attorney

Justin R. Martin
Assistant U.S. Attorney

Philip G. Gallagher   APPD Victoria Gilcrease-Garcia for
Attorney for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 4:21-CR-301

NADIR ABDEL TORRES

PLEA AGREEMENT ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____    6/15/2023
Attorney for Defendant        Date
AFPD Victoria Gilcrease-Garcia for Phil Gallagher

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____    6/15/2023
Defendant                     Date